HcFabland, J.,
delivered the opinion of the court:
J. M. Smith sold and conveyed his land, by deed, to "Win. < bumley, receiving in hand part of the price. Soon after, Crumley sold the land back to Smith, executing a- deed therefor. Smith was to give Crumley for the land, $550, more than Crumley had agreed to pay him. The balance that Crumley owed Smith was canceled, and the amount that Crumley had paid Smith was also arranged, and a note was executed by Smith to Crumley, for the $550, the additional price, and upon this note John Himes became the security of Smith. Soon after the date of this last transaction, Smitii conveyed the land to A. J. Cox, in trust, to secure the $550 note, and also to secure James B. Worley the payment of a note for $156.71, of date 25th of February, 1871.
This deed of trust does not clearly show whether it was made for the benefit of Crumley, the payee of the $550 note, or for the benefit of Himes, the security thereon. It purports to he simply for the purpose of securing the *433 note. It does not appear, however, that Crumley ever accepted or relied upon the benefits of this deed. He transferred tlie $550 note to Jacob Crumley, by whom it. was again transferred, to whom, does not clearly appear. There was judgment against the makers in favor of N. M. Taylor, trustee of D. JVI. Hughes, and the judgment was paid by Himes, or his personal representative.
Upon these facts, the personal representative of Himes and 'Worley join in this bill. It is claimed for Himes’ representative that there was a vendor’s lien on the land in favor of 1m. Crumley, for the $550 note, and that Himes, as surety, having paid this note, should be substituted to this vendor’s lien, and is entitled on this ground to satisfaction out of the land, independent of the deed of trust, and in preference to the right of homestead set up by Smith.
It is first insisted by Smith that the $550 note was not purchase money for the land; that this was only a bonus given by him to procure a rescission of the contract, or, as the witness esxpresses it, for a “rue bargain.” But whatever be the form in which witness expresses it, it was, in legal effect, part of the price of the re-purchase of the land, and stands upon the footing of purchase money. It is next argued for Smith that Himes was released from the payment of the $550 note, because Crumley accepted ether security (that is, the deed of trust), and gave further time, and Himes therefore paid the note in his own wrong.
It does not lie in Smith’s mouth to make this question. Ilimes, as his security, has paid his debt without objection, and must be held entitled to the rights of a surety; and, besides, there is nothing to show that Crumley accepted the deed of trust, or did anything to release Himes.
But a more serious question is this: Conceding that Win. Crumley might have asserted a vendor’s lien, it was a lien or equity .which did not pass to his assignee of the note, in the absence of any special assignment of such *434 equity, there being no express lien retained in the deed. This is well settled.
This being so, Taylor, to whom Himes paid the judgment, had no vendor’s lien, and the question is: Can Himes be substituted to any higher rights than Taylor, the creditor, had?
The argument on the other side is, that Crumley had or might have asserted a lien for the note, and the right of Himes, the surety, to be substituted to this lien upon the payment of the note, attached when he became surety, and that the said Crumley could not assign away the rights or make any assignment to defeat the surety’s right or equity of substitution.
But we think this argument is not sound. Where the note is secured by mortgage, express lien retained in the deed, or by title retained in the vendor — in all which cases the security or lien passes to an assignee of the note, the original holder of the note could not, after the transfer, release the lien or mortgage or convey the property, so as to defeat the rights of the holder or a surety thereon. Nor do we make any question but what, if ITimes had paid the note to Crumley, Crumley thenjiaving the vendor’s equity, or implied lien, that Himes might be substituted thereto. But Crumley had an undoubted right to transfer the note. The legal consequence was to extinguish, for the time at least, his own right, and to transfer tO' his assignee the note simply, without any lien for its security, and when Himes paid the note to' the assignee, he wras not paying off an incumbrance upon the land, but simply a debt. Taylor had no lien on the land to which Himes could be substituted. It is the right of the creditor to whom the debt is paid to Which the surety is substituted.
We hold, therefore, that there was no lieox on this land to which ITimes could be substituted.
But both Himes and Worley are entitled to the benefit of the deed of trust. But as it was Smith’s homestead— *435 bo having a wife and family, and residing upon tbe land, end tbe wife not joining in the alienation — tbe right of homestead, it is assumed, was not lost by tbe deed of trust. Tbe eleventh section of art. 11 of tbe constitution, that “A homestead in tbe possession of each bead of a family, and the improvements thereon, to tbe value, in all, of one thousand dollars, shall be exempt from sale, under legal process, during the life of such bead of a family, to inure to tbe benefit of the widow, and shall be exempt during tbe minority of their children occupying the same. Nor shall »aid property be alienated without the joint consent of husband and wife, where that relation exists. This exemption shall not operate against public taxes nor debts contracted for the purchase money of such homestead, or improvements thereon.’’
After the adoption of this constitution in 1870, the legislature passed an act, approved the 29th of June, 1870 [Acts of 1870, ch. 80], the first section of which, in substance, reiterates the above clause of tbe constitution, with some slight verbal additions, providing, also, that the joint consent of the husband and wife to the alienation shall be evidenced by deed duly executed as required by law for married women. The concluding paragraph of the section is as follows: ‘And provided further, that such real estate shall not be exempt from sale for the payment of public taxes, legally assessed upon it, or from sale.for the satisfaction of- any debt or liability contracted for its purchase, or legally incurred for improvements made thereon.” T. & S. Statutes, 2114a [see now Shannon’s Code, sec. 3798], The alienation by the deed of the husband alone will not defeat the homestead exemption, by tbe express provision of the constitution, but his conveyance of land not covered by the exemption (that is, land other than, what may be included in tbe homestead), will be good, and so probably it would be good to convey the remainder or reversion after the termination of the exemption. As we have held that the land may be sold under judicial process, subject *436 io tbe exemption, it would probably follow t-liat tbe. bus-band may convey bis land, subject only to tbe exemption. So, that tbe creditors under this deed of trust have acquired a valid lien upon tbe property, but tbe question is, whether or not it is subject to the homestead exemption. Was it intended by tbe clause of tbe constituion we have quoted, that tbe debt for purchase money, in order to prevail over tbe exemption, should be a debt for which a vendor’s lien could be enforced? Tbe language is: “This exemption ¡•ball not operate against . . . debts' contracted for tbe purchase money.” Tbe language of tbe act of tbe legislature is: "Such real estate shall not be exempt . . from sale for tbe satisfaction of any debt or liability contracted for its purchase.” There is nothing in this or in tbe constitution indicating that tbe payment of tbe purchase money must be enforced in any particular mode in order to prevail over tbe exemption. Giving this language its plain and ordinary meaning, it would seem to be immaterial in what form tbe debt is presented, or bow its enforcement is sought. It is enough, if it is a debt contracted for purchase money.
There is the same reason in justice for allowing tbe superiority of tbe claim for purchase money over tbe homestead exemption, whether it be in the form of a vendor’s lien, or otherwise. That is, tbe debtor has no moral right to a homestead for which be has not paid. As to tbe rights of third parties, and for some purposes, it would still be important to know if a vendor’s lien attached to the land, but as between tbe vendor, or one standing in bis place, and tbe debtor, it will be enough to know that tbe debt was contracted for tbe purchase of tbe land. We held in an unreported case at Nashville, that where tbe surety bad paid tbe debt for which an express lien was retained— a fc a judicial sale — and bad taken from tbe purchaser of tbe 'and a deed of trust to secure tbe repayment of tbe amount, and tbe purchased' died before foreclosure of tbe deed of trust, bis widow was entitled to dower. Although under our *437 decisions, the vendor’s lien is superior to dower, yet by the express provisions of the statute [Shannon’s Code, sec. ■ 4140], the claim for dower shall prevail over the creditor whose debt is'secured by mortgage or deed" of trust, where the debtor dies before foreclosure, and as the surety in that case had paid off the lien and accepted a deed of trust, his claim should abide the rule declared by the statute.
But the question here is between the creditor and the right of a homestead exemption, and we hold that the exemption shall not be allowed, because the debt is for purchase money, and the constitution declaring the exemption shall not operate against such debt. We hold that Hime’s representative stands in the place of the vendor or creditor to whom the purchase money was paid, and, although he is not entitled to a vendor’s lien, the exemption cannot be allowed against him. It not being alleged that Worley’s debt was purchase .money, the exemption will be allowed against this debt. Special Chancellor W. Y. Deaderick, though proceeding upon somewhat different grounds, arrived at the same conclusion, and his decree will be affirmed with costs.